**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


MICHAEL ROBERT EVERETT,

        Petitioner,


v.                                       Case No:  3:13-cv-916-J-32PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
        Respondents.

_____/

**ORDER**

I.   **Status**

      Petitioner Michael Everett, an inmate of the Florida penal system, initiated this

action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by

a Person in State Custody (Petition; Doc. 1). Everett is proceeding on an Amended

Petition (Amended Petition; Doc. 30), filed on August 22, 2016. Everett challenges his

2008 state court (Flagler County) judgment of conviction for first degree felony murder

and burglary of a dwelling. The circuit court sentenced Everett to incarceration for a

term of life as to the felony murder charge and fifteen years in prison as to the burglary

of a dwelling charge.

      The Amended Petition raises twenty grounds for relief. <u>See</u> Doc. 30 at 11-97.

Respondents filed a Response to the Petition, <u>see</u> Response to Petition (Doc. 12; Resp.)

with exhibits (Resp. Ex.), and a Response to the Amended Petition,[1] <u>see</u> Response to

---

[1] In their Supplemental Response, Respondents represented they are relying
on their original Response as to the claims raised in the Petition. Doc. 38 at 8.

Amended Petition (Doc. 38; Supp. Resp.) with exhibits (Resp. Ex.). Everett filed a Reply to each Response, one through counsel on July 9, 2015 and the other pro se on March 27, 2017. See Reply to Response to Petition for Writ of Habeas Corpus (Doc. 27; Reply); and Reply to Respondent's Response to Amended Petition for Writ of Habeas Corpus (Doc. 41; Supplemental Reply). This case is ripe for review.

## II.   **Relevant Procedural History**

On April 17, 2008, a jury found Everett guilty of first degree felony murder (count one) and burglary of a dwelling with a battery while armed with a dangerous weapon (count two). Resp. Ex. B at 597. On the same day, the circuit court sentenced Everett to incarceration for a term of life as to both counts. Resp. Exs. A; B at 604. The Fifth District Court of Appeal (Fifth DCA) per curiam affirmed Everett's convictions and sentences on April 7, 2009, without a written opinion. Resp. Ex. D.

On April 21, 2010, Everett, through counsel, filed a Motion to Temporarily Hold Proceedings in Abeyance Pending Filing of Supplemental/Amended Motion for Postconviction Relief (Motion to Stay). Resp. Ex. F.[2] On the same day, Everett also filed a Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure

---

[2] Respondents urge that this motion did not operate to toll the one-year statute of limitation for 28 U.S.C. § 2254 habeas petitions because "Petitioner in no way raised any actual substantive claim in the motion itself, but merely asked for a tolling of time to file a substantive motion." Doc. 12 at 11. Although no substantive Rule 3.850 Motion appears in the record Respondents provided, Doc. 13; Doc. 14; Doc. 39, Everett claims that his Motion to Stay contained substantive claims. Doc. 27 at 2. He attached a copy of the initial Rule 3.850 Motion to his Reply. Doc. 27-1. The motion is stamped as filed in the circuit court on April 21, 2010. Id. at 1. Accordingly, the Court finds the Rule 3.850 Motion was a proper tolling motion under 28 U.S.C. § 2244(d)(2).

3.850. Doc. 27-1. The circuit court granted the Motion to Stay on May 11, 2010. Resp. Ex. F. On May 31, 2011, Everett filed an Amended Rule 3.850 Motion. Resp. Ex. G. After an evidentiary hearing, the circuit court denied Everett's Amended Rule 3.850 Motion on December 20, 2011. Resp. Exs. H; I. The Fifth DCA affirmed the circuit court's denial of Everett's Amended Rule 3.850 Motion on February 22, 2013, with a written opinion. Resp. Ex. K. The Fifth DCA issued its Mandate on May 16, 2013. Id.

On April 27, 2011, Everett filed a pro se Petition Alleging Ineffective Assistance of Counsel with the Fifth DCA. Resp. Ex. L. On October 28, 2011, the Fifth DCA issued an opinion granting the petition in part, finding Everett was improperly convicted of first degree burglary after being charged only with second degree burglary. Resp. Ex. N. On January 17, 2012, the circuit court resentenced Everett on count two to incarceration for a term of fifteen years. Resp. Ex. O. On or about January 27, 2012, Everett filed a Motion for Rehearing, seeking appointment of counsel and to be present during the resentencing. Doc. 17. On or about February 23, 2012, the circuit court granted the Motion for Rehearing, vacated the fifteen-year sentence it imposed on January 17, 2012, and ordered a resentencing hearing. Id.

Prior to his resentencing hearing and after the Fifth DCA affirmed the circuit court's denial of his Amended Rule 3.850 Motion, Everett filed the instant Petition on July 23, 2013. Doc. 1. Ultimately thereafter, on March 24, 2014, the circuit court resentenced Everett on count two, imposing a fifteen-year sentence. Resp. Ex. O. The Fifth DCA affirmed his resentencing on May 22, 2015, with a written opinion, and issued the Mandate on June 15, 2015. Resp. Ex. V.

On June 1, 2015, Everett filed another Motion for Postconviction Relief pursuant to Rule 3.850 (Second Rule 3.850 Motion). Resp. Ex. W. On August 18, 2015, the circuit court denied the Second Rule 3.850 Motion. Resp. Ex. X. However, Everett moved for rehearing, arguing he filed an Amended Motion for Postconviction Relief pursuant to Rule 3.850 (Amended Second Rule 3.850 Motion) on August 14, 2015 that had been lost in the mail. Resp. Ex. Y. After granting the motion for rehearing, the circuit court denied the Amended Second Rule 3.850 Motion. Resp. Ex. Z. The Fifth DCA per curiam affirmed, without a written opinion, the circuit court's denial of Everett's Amended Second Rule 3.850 Motion on March 8, 2016, and issued its Mandate on April 27, 2016. Resp. Ex. BB.

On July 1, 2016, Everett initiated a new federal case by filing a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in Case Number 3:16-CV-877-J-32MCR, which attacked the same convictions as the instant Petition. See Doc. 28. The Court sua sponte ordered Everett to explain how he intended to proceed. Id. Ultimately, Everett decided to close his 2016 case and amend his Petition by filing the instant Amended Petition, which the Court allowed over Respondents' objections. Docs. 29; 30; 32; 33-1; 34; 35.

III.   **One-Year Limitations Period**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). For purposes of section 2244(d)(1)(A), the final judgment means both the conviction *and* sentence. Burton v. Stewart, 549 U.S. 147, 156 (2007). Therefore, if a resentencing occurs, then a new judgment has been entered, which restarts the AEDPA statute of limitations. See Magwood v. Patterson, 561 U.S. 320, 341-42 (2010) (holding that "where . . . there is a 'new judgment intervening between the two habeas petitions,' an application challenging the resulting new judgment is

not 'second or successive' at all.") (citations omitted); <u>Insignares v. Sec'y, Fla. Dep't of Corr.</u>, 755 F.3d 1273, 1281 (11th Cir. 2014) (holding that "when a habeas petition is the first to challenge a new judgment [following a resentencing], it is not 'second or successive,' regardless of whether its claims challenge the sentence or the underlying conviction."); <u>Ferreira v. Sec'y, Dep't of Corr.</u>, 494 F.3d 1286, 1293 (11th Cir. 2007) (holding that habeas petition challenging underlying convictions filed by state prisoner more than five years after he was convicted of crime, but only 57 days after the corrected sentence imposed on resentencing became final, was timely filed).

Respondents argue that both the Petition and Amended Petition are untimely. Doc. 12 at 9-13; Doc. 38 at 8-9. While acknowledging the circuit court resentenced Everett on count two, Respondents contend this would only make claims directed specifically at count two timely. Doc. 12 at 11-12. In support of this argument, Respondents rely on <u>Zack v. Tucker</u>, 704 F.3d 917, 926 (11th Cir. 2013) for the proposition that the one-year limitations period of section 2244(d) applies on a claim-by-claim basis. <u>Id.</u> at 12.

Respondents' reliance on <u>Zack</u> is misplaced. In <u>Zack</u>, the Eleventh Circuit held "that the statute of limitations in AEDPA applies on a claim-by-claim basis in a *multiple trigger date case*." <u>Id.</u> (emphasis added). However, the instant case is not a multiple trigger date case; instead, it is a single trigger date case based on section 2244(d)(1)(A). Where section 2244(d)(1)(A) is the only applicable trigger date for the statute of limitations, it is applied to a petition as a whole. See <u>Thompson v. Fla. Dep't of Corr.</u>, 606 F. App'x 495, 505-06 (11th Cir. 2015) (reversing district court's

6

determination that Thompson's petition was untimely and distinguishing case from Zach because Thompson's case was a single trigger case involving a new judgment entered after a resentencing); see also Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005) (noting that section 2244(d)(1) "provides one means of calculating the limitation with regard to the 'application' as a whole, § 2244(d)(1)(A), but three others that require claim-by-claim consideration.").

Moreover, the Eleventh Circuit has previously explained that:

> Florida agrees that—to the extent Rocha challenges his conviction and sentence for Count II—Rocha's section 2254 petition is not second or successive. Florida contends, however, that because Rocha's conviction and sentence for Count I remain undisturbed, Rocha's petition is second or successive to the extent it challenges his Count I conviction or sentence. We disagree.
>
> In Magwood, the Supreme Court rejected a similar approach where—for purposes of determining whether a habeas petition was "second or successive"—a single habeas petition would be bifurcated into two petitions: one comprised of claims that "challenge[d] the new, amended component of the sentence," and one comprised of claims that "challenge[d] any component of the original sentence that was not amended." See Magwood, 130 S.Ct. at 2795. The Supreme Court "explained that the phrase 'second or successive' applies to an application as a whole and rejected the argument that there are 'second or successive' claims under § 2244(b)." Insignares, 755 F.3d at 1279 (quotations omitted) (citing Magwood, 130 S.Ct. at 2798 & n.10).
>
> Because Rocha's March 2016 section 2254 petition is the first petition in which he challenges his new 2015 judgment, the application "as a whole" is not second or successive. The petition, thus, is not subject to dismissal under section 2244(b). Accordingly, we vacate the judgment and remand for further proceedings.

Rocha v. Sec'y, Fla. Dep't of Corr., 692 F. App'x 576, 578 (11th Cir. 2017). Accordingly, Everett's resentencing as to count two resulted in a new judgment, refreshing the statute of limitations period as to all claims related to both counts, including claims directed at the underlying convictions. See Id.; see also Wentzell v. Neven, 674 F.3d 1124, 1127-28 (9th Cir. 2012) ("In the context of finality, we treat the judgment of conviction as one unit, rather than separately considering the judgment's components, i.e., treating the conviction and sentence for each count separately."); cf. Maharaj v. Sec'y Dep't of Corr., 304 F.3d 1345 (11th Cir. 2002) (holding § 2254 petition for writ of habeas corpus was not ripe for review because state judgment had not become final where petitioner had yet to be resentenced on one count, even though the sentences on the remaining counts were final).

Here, the Fifth DCA affirmed the circuit court's resentencing on May 22, 2015, and issued the Mandate on June 15, 2015. Resp. Ex. V. On June 1, 2015, Everett filed his Second Rule 3.850 Motion, tolling the AEDPA statute of limitations. Resp. Exs. W; X; Y; Z. That tolling continued until the Fifth DCA per curiam affirmed the circuit court's denial of his Amended Second Rule 3.850 Motion in a Mandate issued on April 27, 2016. Resp. Ex. BB. Everett filed the Amended Petition on August 22, 2016, Doc. 30, well within one-year from the time his new judgment became final. Accordingly, this action is timely filed.[3] See 28 U.S.C. § 2244(d); Rocha, 692 F. App'x at 578; Thompson, 606 F. App'x 495, 505-06; Insignares, 755 F.3d at 1281.

_____

[3] As the Amended Petition is timely and is the operative complaint, the Court need not address Respondents' claim of untimeliness as to the original Petition.

IV.    **Governing Legal Principles**

A.    **Standard of Review Under AEDPA**

The AEDPA governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that does
> provide a relevant rationale. It should then presume that
> the unexplained decision adopted the same reasoning. But
> the State may rebut the presumption by showing that the
> unexplained affirmance relied or most likely did rely on
> different grounds than the lower state court's decision, such
> as alternative grounds for affirmance that were briefed or
> argued to the state supreme court or obvious in the record
> it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

**B. Exhaustion and Procedural Default**

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

show either (1) cause for and actual prejudice from the default; or (2) a fundamental

miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for

a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

"[A] claim for ineffective assistance of counsel, if both exhausted and not

procedurally defaulted, may constitute cause." <u>Henry v. Warden, Ga. Diag. Prison</u>, 750

F.2d 1226, 1230 (11th Cir. 2014); <u>see also</u> <u>Carrier</u>, 477 U.S. at 488; <u>Philmore v. McNeil</u>,

575 F.3d 1251, 1264 (11th Cir. 2009) (citing <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451

(2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for

review in state court may constitute 'cause' to excuse a procedural default."). But the

petitioner must first present his or her ineffective assistance claim to the state courts

as an independent claim before he may use it to establish cause to excuse the

procedural default of another claim. <u>Carrier</u>, 477 U.S. at 488; <u>see also</u> <u>Henderson v.</u>

<u>Campbell</u>, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective

assistance claim is itself procedurally defaulted, the "procedurally defaulted

---

[6] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." Henderson, 353 F.3d at 897 (citing Edwards, 529 U.S. at 446 and Carrier, 477 U.S. at 478).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

14

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.

15

111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see</u> <u>also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## V.  <u>Analysis</u>

### A.  **Ground One**

Everett claims that the circuit court erred and violated his Confrontation Clause rights in overruling hearsay objections trial counsel raised when Jocelyn Moore testified Everett had "just been there" and Leif Halvorsen testified the victim told him that "[Everett]'s back." Doc. 30 at 11-13. The circuit court ruled these statements were excited utterances and admissible as exceptions to the hearsay rule pursuant to section 90.803(2), Florida Statutes. <u>Id.</u> at 11. According to Everett, the victim's comments did not establish when he had been there or when he had returned. <u>Id.</u> 12.

Therefore, he contends that the state could not prove the victim's statements were excited utterances. Id.

Respondents urge that Everett's failure to raise or argue the federal constitutional dimension of this claim in state court renders it unexhausted for federal habeas corpus purposes. Doc. 12 at 14-15. In the alternative, Respondents assert that the claim lacks merit. Id. at 19-20. In his Supplemental Reply, Everett contends any failure to properly exhaust this claim is excused because of ineffective assistance of counsel on direct appeal pursuant to Murrary v. Carrier or on state postconviction review pursuant to Martinez v. Ryan. Doc. 41 at 4-5.

In reviewing the record, the Court finds this claim is unexhausted because Everett did not present the federal nature of this claim to the state court. Everett raised a similar claim on direct appeal. Resp. Ex. C at 9-12. When briefing this issue, however, Everett did not state or suggest that it was a federal claim concerning the Confrontation Clause or any other federal constitutional guarantee. Id. Instead, Everett argued, in terms of state law only, that the circuit court erred in overruling his objections. Id. (citing Pressley v. State, 968 So. 2d 1039 (Fla. 5th DCA 2007); Burkey v. State, 922 So. 2d 1033 (Fla. 4th DCA 2006); Johnson v. State, 969 So. 2d 938 (Fla. 2007)). As such, Ground One is unexhausted and procedurally defaulted. See Baldwin, 541 U.S. at 29.

Everett's reliance on Martinez to establish cause to excuse this procedural default is misplaced because Martinez applies only to procedurally defaulted claims of ineffective assistance of trial counsel not raised in an initial collateral review

proceeding. See Martinez, 566 U.S. at 9 ("This opinion qualifies Coleman by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."); Gore v. Crews, 720 F.3d 811, 817 (11th Cir. 2013) ("By its own emphatic terms, the Supreme Court's decision in Martinez is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel."). As Ground One is a claim of trial court error, Martinez is inapplicable and does not excuse Everett's procedural default. Gore, 720 F.3d at 817.

To the extent Everett relies on Carrier to argue that ineffective assistance of appellate counsel (IAAC) caused this claim to be procedurally defaulted, he is not entitled to relief. Everett did not raise an independent IAAC claim with the state courts as Carrier requires. Carrier, 477 U.S. at 488. Accordingly, this IAAC claim is unexhausted. Because Everett fails to show cause and prejudice to excuse this secondary layer of procedural default, he cannot show cause to excuse his primary procedural default. See Henderson, 353 F.3d at 897. Thus, the Court determines that Ground One has not been exhausted because Everett failed to fairly present it as a federal constitutional claim on direct appeal. Everett has failed to show cause to excuse this default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

18

Nevertheless, had Everett properly exhausted this claim, Ground One is without merit. The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. The Confrontation Clause bars the admission of "testimonial" hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 68 (2004). Hearsay statements are testimonial when "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52. "[S]tatements made in private conversation are generally nontestimonial because there is no reason to believe that the statements will be used at trial." United States v. Berkman, 433 F. App'x 859, 863 (11th Cir. 2011) (citing United States v. U.S. Infrastructure, Inc., 576 F.3d 1195, 1209 (11th Cir. 2009)); see also United States v. Brown, 441 F.3d 1330, 1360 (11th Cir. 2006) ("The phone conversation Davis overheard obviously was not made under examination, was not transcribed in a formal document, and was not made under circumstances leading an objective person to reasonably believe the statement would be available for use at a later trial. Thus, it is not testimonial and its admission is not barred by Crawford."). Under this reasoning, the victim's statements to Moore and Halvorsen do not fall within the ambit of prohibited testimonial hearsay statements contemplated by Crawford. See Crawford, 541 U.S. at 68 ("When nontestimonial hearsay is at issue, it is wholly consistent with the Framer's design to afford the States flexibility in their development of hearsay law[.]").

19

Everett does not identify, and this Court is unable to locate, any "clearly established" federal authority showing that the Confrontation Clause is violated where a state court admits a non-testimonial spontaneous utterance under a state exception to the hearsay rule.[7] Accordingly, the state court's denial of this claim could not have been contrary to, or an unreasonable application of, clearly established federal law. Neither was the state court's rejection of this claim based upon an unreasonable determination of the facts. State court rulings on the admissibility of evidence generally are not within the scope of federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Therefore, Everett cannot obtain federal habeas relief and Ground One is denied.

**B.     Ground Two**

Everett asserts that appellate counsel was ineffective for failing to argue that the circuit court erred when it denied his pre-trial motion to suppress his statements to the police. Doc. 30 at 14-20. According to Everett, the circuit court failed to consider the totality of the circumstances when it denied his motion. Id. at 14. He further asserts that police "promises of leniency, coupled with [his] intoxication, the lateness of the hour, no probable cause to arrest [him] . . . and his request that the tape recorder be turned off, violated Mr. Everett's rights under the federal totality of the circumstances standard." Id. at 15.

---

[7] To the contrary, prior to its decision in Crawford, the United States Supreme Court determined that the excited utterance, or spontaneous statement, exception to the hearsay rule does not violate the Confrontation Clause. White v. Illinois, 502 U.S. 346, 355-57 (1992).

Everett raised the issue of his intoxication and the police officer's improper promises in a motion to suppress with the circuit court, and after a hearing, the court determined that the claim had no merit:

> The Defendant was questioned at the Flagler Beach Police Department concerning the murder of Lindsey Brown. The Defendant does not deny that he was given his <u>Miranda</u> warnings but he alleges he was too intoxicated to understand those rights or to voluntarily waive them. Additionally[,] the Defendant claims that the investigating officer improperly induced the inculpatory statements by making direct or implied promises.
>
> Even if intoxication is proven, such intoxication is a fact for the jury to consider in determining weight and credibility. <u>Lindsey v. State</u>, 66 Fla. 341 (1914). "A person under the influence of alcohol wa[i]ving constitutional rights is legally competent to do so if, despite the degree of intoxication, he is 'aware and able to comprehend and to communicate with coherence and rationality.'" <u>Burns v. State</u>, 584 So. 2d 1073, 1075 (Fla. 4th DCA 1991). After review of the Defendant's interview this Court finds he was not suffering from "mania" in that his responses had a contextual relationship, he was coherent and not rambling. <u>See</u> <u>Lindsey</u> and <u>Burns</u>, <u>supra</u>. Therefore the issue is properly before the jury.
>
> As to the issues of improper inducement, there is nothing in the record to suggest the statements were improperly induced. The interviewer simply informed the Defendant on several occasions that an accident was a less serious crime th[a]n one of intent. At no time was there an express quid pro quo bargain for the confession. <u>See</u> <u>Bruno v. State</u>, 574 So. 2d 76 (Fla. 1991).

(Resp. Ex. M, App. E). Everett did not appeal the denial of his motion to suppress.

Resp. Ex. C. Instead, Everett argued in his state habeas petition that appellate counsel

was ineffective for failing to do so. Resp. Ex. L at 8-17. The Fifth DCA determined the claim was not meritorious but did so without analysis.[8] Resp. Ex. N at 2.

To the extent that the Fifth DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Everett is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, Ground Two is without merit. First, having reviewed the statements Everett alleges demonstrate improper inducement, Doc. 30 at 16-17, the Court finds these statements are not expressing a quid pro quo bargain. Instead, the police merely inform Everett of the possibility of lesser offenses if the murder was done without intent. Second, reasonable appellate counsel could have decided against raising this claim on direct appeal because Everett testified under oath at his trial that he did not make his statement to police due to his hope of a lesser sentence, but because it was

_____

[8] Notably, Respondents assert this claim was properly exhausted. Doc. 12 at 15.

[9] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

the truth. Resp. Ex. B at 437. He testified that he was never worried about being charged with premeditated murder. Id. at 481. Therefore, any promises, express or implied, from the police did not cause Everett to make his statements to the police or render the statements involuntary. See Blake v. State, 972 So. 2d 839, 844 (Fla. 2007) ("[A] promise alone is not sufficient to render a confession involuntary. There must also be a *causal connection* between the police conduct and the confession.") (emphasis in original); see also Colorado v. Connelly, 479 U.S. 157, 164 (1986) ("Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.").

Next, before he spoke with the police, Everett was advised of his Miranda[10] rights, and signed a form acknowledging such. Resp. Ex. M, App. D at 32, 58-59. Everett admitted at trial that he knew the consequences of speaking with the police but lied to them in hopes that he could divert police attention away from himself. Resp. Ex. B at 480. Everett also noted that "[i]t's legal for [the police] to lie to me during an interrogation, so why, why don't I have the right to lie to them?" Id. at 480. Reasonable appellate counsel could have concluded that Everett's Miranda waiver and statements at trial negated any argument on direct appeal that his confession to the police was involuntary.

Regarding Everett's claims he attempted to invoke his right to remain silent when he stated "turn off the recorder," the transcribed recording of the interrogation

---

[10] Miranda v. Arizona, 384 U.S. 436 (1966).

introduced at the suppression hearing and at trial does not include any reference to the conversation Everett alleges occurred on page fifteen of his Amended Petition. Resp. Exs. B at 144-235; M, App. D at 56-104. Nor does Everett provide any page numbers or citations to where this alleged conversation can be located. Moreover, the recorded statements reflect Everett waived his <u>Miranda</u> rights prior to confessing. Resp. Ex. B at 145-46. As such, the Court concludes Everett has failed to establish this conversation even occurred.

Finally, a defendant's intoxication during a police interview generally affects the credibility, not the admissibility, of a confession. <u>Slade v. State</u>, 129 So. 3d 461, 464 (Fla. 2d DCA 2014). However, the mind of the accused must have been "sufficiently clear and unhampered by the combination of his physical condition and the impact of the [intoxicant] that it can be [said] that he freely and voluntarily related his connection with the crime." <u>Reddish v. State</u>, 167 So. 2d 858, 863 (Fla. 1964). Investigator Michael Shon McGuire testified at the hearing on Everett's motion to suppress that Everett was alert, responsive, and appeared to understand and appropriately answer the questions posed to him. Resp. Ex. M, App. D at 135-36. McGuire did not believe that Everett was intoxicated. <u>Id.</u> at 36. Likewise, Officer Lou Lizette Williams testified that Everett was "very coherent" during the interview and did not appear to be under the influence of alcohol or drugs. <u>Id.</u> at 54. She testified that Everett's demeanor did not change during the interview. <u>Id.</u> at 55. Upon review of the portion of the police interview contained in the suppression hearing transcript, Everett provided appropriate and cogent answers to the police officers' questions and

did not appear to be so intoxicated that his waiver was not freely and voluntarily given. Id. at 56-104. Reasonable appellate counsel could have concluded that the circuit court did not abuse its discretion when it found that Everett's level of "intoxication is a fact for the jury to consider in determining weight and credibility." Resp. Ex. M, App. E.

Because reasonable appellate counsel could have concluded that the arguments Everett now advances would have had little chance of success on direct appeal, appellate counsel's performance was not deficient for failing to raise them in Everett's appellate brief. See Rutherford v. Moore, 774 So. 2d 637, 643 (Fla. 2000) ("[I]f a legal issue 'would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective.") (quoting Williamson v. Dugger, 651 So. 2d 84, 86 (Fla. 1994)). Nor has Everett shown any actual prejudice as a result of appellate counsel's alleged errors. There is no basis to conclude that appellate counsel's alleged omissions had any effect on the appellate court's affirmance of Everett's convictions and sentences. See United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) ("To determine whether [an ineffective assistance of appellate counsel claim has merit], we must decide whether the arguments the defendant alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal.") (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988))). Everett fails to satisfy either prong of Strickland's ineffectiveness test. Accordingly, Ground Two is denied.

**C.    Grounds Three and Four**

In Ground Three, Everett asserts that appellate counsel was ineffective for failing to argue on direct appeal that the circuit court erred when it denied trial counsel's motion for a judgment of acquittal as to count one. Doc. 30 at 21-24. Similarly, in Claim Four, Everett argues that appellate counsel was ineffective for failing to argue that the circuit court erred when it denied his motion for a judgment of acquittal as to count two. Id. at 25-29.[11] Everett raised both claims in his state habeas petition filed with the Fifth DCA. Resp. Ex. L at 18-33. The Fifth DCA denied both claims as lacking merit, but without analysis. Resp. Ex. N at 2.

To the extent that the Fifth DCA decided these claims on the merits, the Court will address these claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Everett is not entitled to relief on the basis of these claims.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, Grounds Three and Four are without merit. In moving for a judgment of

---

[11] In Ground Four, Everett also raises a sub-claim that is substantially related to the claim raised in Ground Five. Doc. 30 at 26-27. Accordingly, the Court will address this sub-claim when it addresses Ground Five.

acquittal, a defendant "admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." <u>Beasley v. State</u>, 774 So. 2d 649, 657 (Fla. 2000) (quoting <u>Lynch v. State</u>, 293 So. 2d 44, 45 (Fla. 1974)). Under Florida law, first degree murder is defined as the unlawful killing of a human being: (1) when perpetrated from a premeditated design to effect the death of the person killed or any human being; or (2) when committed by a person engaged in the perpetration, or in the attempt to perpetrate a number of enumerated felonies. §§ 782.04(1)(a)(1) and 782.04(1)(a)(2), Fla. Stat. Burglary is defined as "entering . . . a dwelling, a structure, or a conveyance with the intent to commit an offense therein[.]" <u>Drew v. State</u>, 773 So. 2d 46, 48 (Fla. 2000); § 810.02(1), Fla. Stat. (2007).

Here, the parties stipulated that the victim was dead. Resp. Ex. B at 295. The medical examiner testified that the victim died as a result of "assaultive injuries to the head, neck, and heart." <u>Id.</u> at 366. The medical examiner described multiple injuries to the victim, including two blunt force injuries and lacerations to her head, one of which contained fragments of brown glass. <u>Id.</u> at 356, 358, 363, 365, 366. The victim also suffered numerous abrasions on her face and neck, possible asphyxiation, and bruising to her heart. <u>Id.</u> at 357, 358, 360, 361-62, 365. Evidence was also presented that the victim's screen door had been cut and pieces of the wooden door frame, the door chain, and the deadbolt strike plate were found on the floor just inside the victim's apartment. <u>Id.</u> at 58-67, 91, 92. A surveillance video from a bar near the victim's home showed Everett putting a beer bottle in his back pocket and leaving just

minutes before the murder. Id. at 254, 257. The jury heard testimony that the victim was afraid of Everett, who had threatened her earlier in the evening, and that she told her boyfriend, "he's back, I'm calling the cops," shortly before she died. Id. at 281-82, 320-21.

This evidence, when viewed in the light most favorable to the state, was sufficient for the circuit court to send both counts to the jury. See Hodges v. State, 55 So. 3d 515, 541 (Fla. 2010) ("Given this evidence of multiple injuries to the head and neck, a reasonable jury could have concluded that the perpetrator formed a premeditated intent to kill."); Morrison v. State, 818 So. 2d 432, 452 (Fla. 2002) ("Premeditation may be formed in a moment and need only exist for such a time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act. Premeditation can be shown by circumstantial evidence."); Sochor v. State, 619 So. 2d 285, 288 (Fla. 1993) ("Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted."). As such, reasonable appellate counsel could have concluded that there was little or no chance for a challenge to the circuit court's rejection of Everett's motion for a judgment of acquittal to succeed on direct appeal. See Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991) (neglected claim satisfies test for ineffective assistance of appellate counsel only if claim had "a reasonable

probability of success on appeal"). Accordingly, Everett has failed to establish deficient performance or prejudice; therefore, Grounds Three and Four are denied.

**D.    Grounds Four (A) and Five**

In Ground Five, Everett asserts that it was fundamental error for the circuit court to amend the verdict form after the jury had begun deliberations to include a charge of felony murder. Doc. 30 at 30-32. Noting that this amendment to the verdict form occurred after a jury question concerning felony murder, Everett argues that the circuit court erred "by allowing jury foreperson (Ms. Robinson) to enter into the realm of judicial authority in the amendment of the verdict form for Count One, after the jury started the deliberation process." Id. at 31. In Ground Four (A), Everett contends appellate counsel was ineffective for failing to raise this claim on direct appeal. Doc. 31 at 26-28.

Respondents aver that Grounds Four (A) and Five are procedurally defaulted because Everett failed to raise these claims in state court at any time. Doc. 12 at 15. In his Supplemental Reply, Everett contends any failure to properly exhaust this claim is excused due to ineffective assistance of counsel on direct appeal pursuant to Murrary v. Carrier or on state postconviction review pursuant to Martinez v. Ryan. Doc. 41 at 4-5.

In reviewing the record, the Court finds Grounds Four (A) and Five are unexhausted because Everett never raised these claims with the state court. As such, Ground One is unexhausted and procedurally defaulted. To the extent Everett relies on Martinez to establish cause to excuse this procedural default, this argument fails

29

because <u>Martinez</u> is inapplicable. <u>See</u> <u>Martinez</u>, 566 U.S. at 9; <u>Gore</u>, 720 F.3d at 817.

Likewise, to the extent Everett relies on <u>Carrier</u> to argue IAAC caused this claim to

be procedurally defaulted, he is not entitled to relief. Everett did not raise an

independent IAAC claim with the state courts as <u>Carrier</u> requires. <u>Carrier</u>, 477 U.S.

at 488. Accordingly, this IAAC claim is unexhausted. Because Everett fails to show

cause and prejudice to excuse this secondary layer of procedural default, he cannot

show cause to excuse his primary procedural default. <u>See</u> <u>Henderson</u>, 353 F.3d at 897.

Thus, the Court determines that Grounds Four (A) and Five have not been

exhausted because Everett failed to present these claims to the state court. Everett

has failed to show cause to excuse this default or actual prejudice resulting from the

bar. Moreover, he has failed to identify any fact warranting the application of the

fundamental miscarriage of justice exception.

Nevertheless, had Everett properly exhausted this claim, Grounds Four (A) and

Five are without merit. During jury deliberations, the circuit court received a juror

question stating, "On verdict: We do not see on the final sheet the difference between

premeditated and felony murder." Resp. Ex. B at 592. Trial counsel did not have an

objection to amending the verdict form and the circuit court provided the jury with a

verdict form that included a special interrogatory on felony murder. <u>Id.</u> at 594-95. The

jury returned the amended verdict form finding Everett guilty of felony murder on

count one and burglary of a dwelling with a battery and while armed with a dangerous

weapon on count two. Resp. Ex. M, App. H.

Everett has not identified, and the Court has not discovered, any clearly established federal law indicating that a defendant's constitutional rights are violated when a verdict form is amended to clarify the counts against him. This failure alone is sufficient to defeat a section 2254 habeas claim. Moreover, a review of the record demonstrates that no error, constitutional or otherwise, occurred when the circuit court clarified the verdict form. The state charged Everett in count one of his indictment with first degree murder on both the theory of "premeditated design" and felony murder. Resp. Ex. A. Nothing in the record suggests (as Everett now claims) that the state "abandoned" its felony murder theory. To the contrary, the prosecutor asked the jury to convict Everett of both premeditated and felony murder during closing. Resp. Ex. B at 514, 516, 530, 534. The circuit court instructed the jury that there are two ways a person can be convicted of first degree murder: premeditated murder or felony murder. Id. at 571-73. The record shows that it was clearly explained to the jury that they had a choice of finding Everett guilty of first-degree premeditated murder, first-degree felony murder, or one of the lesser included offenses. That the jury sought, and was granted, clarification of the verdict form in no way contributed to Everett's conviction. Therefore, there would have been no reason for appellate counsel to raise this issue on appeal. Accordingly, Grounds Four (A) and Five are denied. See Heath, 941 F.2d at 1132.

### E.    Ground Six

Everett asserts that trial counsel was ineffective for failing to object to the presence of a sleeping juror on the last afternoon of his trial. Doc. 30 at 33-36. Everett

raised this claim in his Amended Rule 3.850 Motion. Resp. Ex. G at 11-12. The circuit court held an evidentiary hearing at which Everett's parents, counsel, the presiding judge, and the prosecutor testified. Resp. Ex. H. Thereafter, the circuit court denied this claim, stating:

> The Defendant alleges that counsel was ineffective for failing to object to the presence of a sleeping juror during critical testimony. An allegation that defense counsel failed to object to the presence of a sleeping juror constitutes a cognizable claim of error on collateral review. <u>Kelley v. State</u>, 805 So. 2d 88 (Fla. 2d DCA 2002). At the evidentiary hearing *sub judice* Assistant Public Defender Matthew Phillips testified that the Defendant's father expressed concern to him that a juror was sleeping. Mr. Phillip[s] advised that he would keep an eye on the juror, testified that he did so, but did not observe the juror sleeping. He further stated that if he would have observed a juror sleeping[,] he would have informed the Judge. The Defendant's father, Greg Everett testified that he observed the juror sleeping on the last day of trial, after lunch. Mr. Everett said the juror was sleeping "chin on chest" for about 10 minutes. The Defendant's mother, Cheryl Everett, testified the juror appeared to be fighting sleep after lunch on the last day of trial. She stated his head would fall forward and then jerk back, as if he was nodding off. Neither of the Everett[s] could recall the substance of what was occurring in the courtroom at the time of their observations. The Clerk's notes indicate that all testimony was complete before lunch on the last day of trial.

> Both the presiding Judge and the Prosecuting Attorney testified that it was their habit to keep a close watch on the jurors and that neither observed a juror to be sleeping. The Judge advised that if he witnessed a juror to be drowsy, it was his policy to take a break. He did not find it necessary to do so at this trial.

> There is insufficient, consistent testimony to establish that a juror was sleeping during crucial testimony. Counsel's conduct was neither deficient, nor prejudicial.

32

Resp. Ex. I at 105-06. The Fifth DCA affirmed the circuit court's denial of this claim in a written opinion, stating that:

> Although defendant's parents testified that they saw a juror sleeping, the assistant state attorney and the defense counsel, both of whom testified that they watched out for sleeping jurors, saw none on this jury. The circuit court's finding that the defendant failed to prove a sleeping juror had ample support in the record.

Resp. Ex. K at 2.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Everett is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, Ground Six is without merit. Questions of the credibility and demeanor of a witness are questions of fact. Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999). Determining the credibility of a witness, "is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); see also 28 U.S.C.A. § 2254(e)(1) ("[A] a determination of a factual issue made by a State court shall be presumed to be correct.

The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). As such, federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983).

At the evidentiary hearing on this claim, the testimony of Everett's parents was in direct conflict with the testimony of the trial judge, the state prosecutor, and Everett's own counsel. The state courts' conclusions that Everett did not demonstrate the presence of a sleeping juror is an implicit determination that the state courts found the testimony of counsel, the state court judge, and the prosecutor to be more credible than that of Everett's parents. Everett presents no clear and convincing evidence to rebut the presumption of correctness given the state court's factual conclusions or credibility determinations. See 28 U.S.C.A. § 2254(e)(1). Accordingly, Everett cannot establish deficient performance or prejudice; therefore, Ground Six is denied.

### F. Grounds Seven and Seventeen[12]

Everett asserts that trial counsel was ineffective for failing to call Edwin Gravenstein and Ashley Gravenstein as witnesses to support his motion in limine to suppress the hearsay statements of Moore and Halvorsen. Doc. 30 at 37-40, 79-84. Everett claims that the Gravensteins overheard an argument between Everett and the victim earlier on the day she was murdered and that their testimony could have

---

[12] Ground Seventeen realleges claims raised in Grounds Seven and Eleven; therefore, the Court addresses aspects of Ground Seventeen in its analysis of both Grounds Seven and Eleven.

supported counsel's argument that the victim had time for "reflective thought" before she made her incriminating statements to Moore and Halvorsen. Doc. 30 at 38.

Everett raised this claim in his Rule 3.850 motion, and after conducting an evidentiary hearing, the post-conviction court denied the motion in a written order:

> [T]he Defendant alleges that counsel was ineffective for failing to investigate Edwin and Ashley Gravenstein as defense witnesses, in conjunction with the Defendant's Motion in Limine. Prior to the trial defense counsel filed a Motion in Limine to Exclude Hearsay Testimony and to direct the State of Florida and its witnesses not to state, mention or make any type of reference to statements allegedly made by the victim Lindsay Brown to Jocelyn Moore, Richard Moore or Leif Halvorsen, during a series of phone calls made on January 6, 2007, the night of her death. The defense claimed that the statements were inadmissible hearsay pursuant to Florida Statute Section 90.802 and none of the hearsay exceptions would apply. A hearing was conducted on April 2, 2008.
>
> On April 11, 2008 the Court entered an Order Denying the Motion in Limine finding that "[c]learly some of the statements do fall under the excited utterance and spontaneous statement exceptions to the hearsay rule. F.S. 90.803(1) & (2)," and further ordered that the admissibility of such evidence would be considered in a timely manner when evidence was sought to be admitted. At trial proffers were made and the court found the proffered testimony to be admissible. On direct appeal, raising the admission of those statements, *inter alia*, the conviction and sentence was upheld. Fifth District Court of Appeals, Case No.:5D08-1445, per curiam affirmed April 7, 2009; mandate issued April 29, 2009.
>
> The Defendant now claims that if trial counsel would have presented the testimony of Edwin and Ashley Gravenstein, neighbors of the decedent, their testimony would have impeached Jocelyn Moore's testimony on the timing of the victim, Lindsey Brown's confrontation with the Defendant, resulting in the exclusion of the hearsay statements made

by the victim, and a different outcome to the trial. A review of the record clearly refutes this claim; the Gravensteins were referring to two incidents earlier in the day than the one described by Lindsey Brown to Mrs. Moore within less than an hour of her death. Jocelyn Moore testified that she received a call from Ms. Brown at about 9:40 PM on January 6, 2007. She testified Ms. Brown was sobbing uncontrollably and said that Michael [the Defendant] had *just* been to her house and had threatened her . . . that he was going to kill her. (Emphasis added). Ms. Brown hung up to call Leif Halvorsen and said she would call Mrs. Moore back. Leif Halvorsen testified that on January 6, 2007, at approximately 9:50 PM he received a call from Lindsey Brown. The call abruptly ended when she said . . . "he's back, I'm calling the cops."

Depositions were taken from the Gravensteins on April 3, 2008. Mrs. Gravenstein stated that on January 6, 2007 she saw a gentleman leaving Ms. Brown's apartment – he called Ms. Brown a bitch and mumbled something about when he came back. Mrs. Gravenstein said it was still light out, mid to late afternoon, possible as late as 6:00 PM. Mr. Gravenstein had observed an incident earlier in the day, in the middle of the afternoon; his wife was not with him. The Gravensteins' statements would have had [sic] not been relevant to impeach the testimony of Mrs. Moore or Mr. Halvorsen, or to have affected the timeline of the crime as set forth in the trial. This Court does not find trial counsel to have been deficient by failing to call or present the testimony of these witnesses at either the motion in limine hearing or the trial. Furthermore, there is no prejudice, the evidence of guilt being overwhelming. Rimmer v. State, 59 So. 3d 763, 778 (Fla. 2010).

Resp. Ex. L at 106-08 (footnote and record citations omitted). The Fifth DCA affirmed the post-conviction court's conclusion in a written opinion, specifically finding that there was support for the lower court's finding that "the testimony of the witnesses now urged by defendant involved a separate meeting between the victim and defendant which occurred earlier in the day." Resp. Ex. K at 2.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Everett is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, Grounds Seven and Seventeen are without merit. A review of the Gravensteins' deposition testimony supports a conclusion that the interactions they witnessed were not the same encounters about which Moore and Halverson testified. Resp. Ex. G at 27-64. Both Gravensteins stated that they observed Everett during mid or late afternoon, when it was daylight, whereas Moore and Halverson relayed statements the victim made shortly before her death around 10 p.m. Resp. Exs. G at 30, 31, 35, 46, 48, 58; B at 265-68, 320. At trial, Everett testified that he visited the victim in the evening hours, stormed out of her apartment, and returned to a nearby bar. Resp. Ex. B at 418-19. He testified that he left the bar soon thereafter to apologize to the victim, but the second encounter resulted in the victim's death. Id. at 421, 428. A surveillance video from the bar shows that Everett initially entered at 6:30 p.m., left at 8:40 p.m., returned at 9:36 p.m., and left again at 9:44 p.m. Id. at 253-54. The victim's telephone calls to Moore and Halverson occurred between 9:30 p.m. and 9:50

37

p.m. Id. at 265-68, 320. Counsel testified at the evidentiary hearing on Everett's Rule 3.850 Motion that he knew the Gravensteins had observed different encounters than the ones that were the subject of the victim's telephone calls to her friends because Everett told him in confidence that he had actually gone to the victim's apartment three times on the day in question. Resp. Ex. H at 55-56. The victim and Everett had argued during this first daytime visit, and counsel concluded that "whatever the Gravensteins witnessed was not the subject of the phone call made to Jocelyn Moore." Id. at 58, 82.

Reasonable defense counsel could have concluded that the Gravensteins' observations of an earlier unrelated argument between Everett and the victim were irrelevant to Everett's hearsay claims. Reasonable counsel could have also strategically decided against calling the state's attention to the first altercation between Everett and the victim – particularly since the defense strategy involved showing that Everett had not planned to kill the victim and an earlier fight would not have supported that strategy.[13] Accordingly, Everett has failed to establish either deficient performance or prejudice; therefore, Grounds Seven and Seventeen are denied.

---

[13] Because the Court's inquiry is an objective one, counsel's *actual* motivation is irrelevant on federal habeas review. See Castillo v. Sec'y, Fla. Dep't of Corr., 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under Strickland's performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

### G.    Ground Eight

Everett challenges the sufficiency of the evidence of his burglary conviction. Doc. 30 at 41-44. Specifically, he claims that the state failed to prove that he intended to commit an offense inside the victim's home. Id. at 42.

Respondents contend Everett failed to properly exhaust this claim. Doc. 38 at 10. While noting Everett raised a similar claim on the direct appeal of his resentencing, Respondents argue "[t]he validity of the Petitioner's conviction was not before the court in that proceeding." Id. According to Respondents, to have properly exhausted this claim, Everett should have raised this claim in his initial direct appeal. Id. In his Supplemental Reply, Everett contends any failure to properly exhaust this claim is excused because of ineffective assistance of counsel on direct appeal pursuant to Murrary v. Carrier or on state postconviction review pursuant to Martinez v. Ryan. Doc. 41 at 4-5.

Everett raised a similar claim on the direct appeal following his resentencing on count two.[14] Resp. Ex. S at 15-18. The Fifth DCA affirmed Everett's resentencing with an opinion. Resp. Ex. V. After recounting the procedural history, the Fifth DCA held only that "Everett's new claims of deficient performance are either insufficient, untimely, or both." Id. at 2.

Based on this limited opinion, it is unclear whether the Fifth DCA addressed this claim on the merits or not as the opinion seems to only discuss the ineffective

---

[14] In total, Everett raised eight claims for review, two alleging trial court error and six alleging ineffective assistance of postconviction counsel. Resp. Ex. S.

assistance of counsel claims. Id. It is possible the Fifth DCA could have concluded this claim was not properly before it due to the procedural posture of the case. See Perez v. State, 956 So. 2d 1221, 1222 (Fla. 4th DCA 2007) ("We agree that all issues regarding the convictions in this case are *res judicata* and could not be 'preserved' following the Supreme Court's limited remand for a new 'penalty phase proceeding.'") (quotations omitted). Alternatively, the Fifth DCA could have considered it on the merits and merely decided it was not worth commenting on in its opinion. In light of this ambiguity, the Court cannot presume the Fifth DCA rejected this claim on procedural grounds, particularly because it appears the circuit court did not address this issue either. See Yist v. Nunnemaker, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

In any event, the Court need not decide whether Everett properly exhausted this claim, because the claim is without merit. See 28 U.S.C.A. § 2254(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (explaining that "[j]udicial economy might counsel" bypassing a procedural-default question if the merits "were easily resolvable against the habeas petitioner"). In reviewing the sufficiency of the evidence, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Burglary is defined as "entering . . . a dwelling, a structure, or a conveyance with the intent to commit an offense therein[.]" <u>Drew</u>, 773 So. 2d at 48; § 810.02(1), Fla. Stat. (2007).

For the reasons the Court explained above in its analysis of Ground Four, the Court finds there was legally sufficient evidence to present this charge to the jury and for a jury to conclude Everett was guilty of burglary. As noted above, there was evidence of a forced entry. Resp. Ex. B at 58-67, 91, 92. Likewise, there was circumstantial evidence establishing Everett's intent to commit a murder inside the home of the victim. <u>Id.</u> at 75, 104-05, 254, 257, 281-82, 295, 320-21, 356-58, 360-63, 365-66; <u>see also</u> <u>West v. State</u>, 289 So. 2d 758, 759 (Fla. 3d DCA 1974) (noting that circumstantial evidence can prove the element of intent in a burglary charge); <u>Morrison</u>, 818 So. 2d at 452; <u>Sochor</u>, 619 So. 2d at 288. Given the evidence of Everett's threats, the cut screen and broken door on the victim's home, and the extent of the victim's injuries, this evidence was sufficient for a reasonable jury to find Everett guilty of burglary. Accordingly, Ground Eight is denied.

## H. Ground Nine

Everett avers that the circuit court erred in denying his pro se Motion for New Trial and Motion for Arrest of Judgment during the resentencing hearing. Doc. 30 at 45-47. Noting that the circuit court ruled these motions were nullities due to Everett filing the motions while counsel represented him, Everett claims that the motions were timely and properly filed. <u>Id.</u> at 47.

41

Everett filed these two motions on March 24, 2014. Resp. Ex. Q. The circuit court denied the motions, stating in pertinent part that "[t]he pro se motions filed by the Defendant, a represented party, are a nullity." Resp. Ex. R. Everett then raised the denial of these motions on direct appeal following his resentencing. Resp. Ex. S at 20-22. The Fifth DCA affirmed the circuit court's denial of these motions with a written opinion, although the written opinion does not address this specific claim. Resp. Ex. V at 2.

To the extent that the Fifth DCA decided the claim on the merits,[15] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Everett is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, Everett would not be entitled to federal habeas relief on this claim. Everett's motions were a matter of state, not federal, law. See Fla. R. Crim. P. 3.580, 3.590, 3.600, 3.610. Furthermore, in striking his motions, the circuit court again

---

[15] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

relied on Florida law, which states that if a defendant has counsel, then pro se filings are considered nullities, except motions to discharge counsel. <u>Sheppard v. State</u>, 17 So. 3d 275 (Fla. 2009). As Everett's motions and the circuit court's determination the motions were nullities were based entirely on state law, Everett is not entitled to federal habeas relief. <u>See</u> <u>Swarthout v. Cooke</u>, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review). Accordingly, Ground Nine is denied.

## I. Grounds Ten and Sixteen

Everett complains that his trial counsel was ineffective for failing to challenge the constitutionality of his confession on grounds law enforcement lacked probable cause or a warrant to arrest him. Doc. 30 at 48-53, 74-77. According to Everett, his confession is the fruit of an illegal arrest and should have been suppressed because law enforcement forced him from his house and took him in for questioning without having probable cause or a warrant to do so. <u>Id.</u> Respondents contend Everett failed to properly exhaust this claim, because he raised it as a claim of ineffective assistance of postconviction counsel on direct appeal of his resentencing and in his Second Rule 3.850 Motion. Doc. 38 at 10-11.

The record reflects Everett did raise this claim as a claim of ineffective assistance of postconviction counsel in both his appeal of his resentencing and in his Second Rule 3.850 Motion. Resp. Exs. S at 23-31; W at 293-300. However, Everett also asserted this claim as one of ineffective assistance of trial counsel in his Amended

Second Rule 3.850 Motion. Resp. Ex. Y at 340-47. The circuit court subsequently

denied this claim, stating that:

> On August 20, 2007 trial counsel filed a Motion to
> Suppress challenging the voluntariness of Defendant
> Everett's statements. Following an evidentiary hearing that
> motion was denied on January 3, 2008. This claim is
> summarily denied.

Resp. Ex. Z at 379 (record citations omitted). The Fifth DCA per curiam affirmed the

denial of this claim without a written opinion. Resp. Ex. BB. Based on this record, the

Court concludes Everett has properly exhausted this claim. See Boerckel, 526 U.S. at

845 (noting that to properly exhaust a claim, "state prisoners must give the state

courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process.").

To the extent that the Fifth DCA decided the claim on the merits,[16] the Court

will address the claim in accordance with the deferential standard for federal court

review of state court adjudications. After a review of the record and the applicable law,

the Court concludes that the state court's adjudication of this claim was not contrary

to clearly established federal law, did not involve an unreasonable application of

clearly established federal law, and was not based on an unreasonable determination

of the facts in light of the evidence presented in the state court proceedings. Thus,

Everett is not entitled to relief on the basis of this claim.

---

[16] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, Grounds Ten and Sixteen are without merit. "Probable cause exists for an arrest when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Wolk v. Seminole Cty., 276 F. App'x 898, 899 (11th Cir. 2008) (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)). Under Florida law, murder in the first degree is defined as the unlawful killing of a human being: (1) when perpetrated from a premeditated design to effect the death of the person killed or any human being; or (2) when committed by a person engaged in the perpetration, or in the attempt to perpetrate a number of enumerated felonies. §§ 782.04(1)(a)(1) and 782.04(1)(a)(2), Fla. Stat.

The charging affidavit reflects that prior to even contacting Everett police had the following evidence: (1) a 911 call of a possible homicide specifically naming Everett as a suspect; (2) upon arriving at the scene police found signs of a forced entry and the dead victim; (3) neighbors said they observed Everett at the scene right before the murder; and (4) an interview with Moore in which she named Everett as a suspect. Doc. 31-5. Based on this information, police would have had probable cause to arrest Everett for the murder of this victim. Wolk, 276 F. App'x at 899. Accordingly, any motion to suppress on this ground would have been meritless. Counsel cannot be deemed ineffective for failing to raise a meritless issue. See Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise

nonmeritorious issues does not constitute ineffective assistance."). Therefore, Grounds Ten and Sixteen are denied.

**J.     Grounds Eleven and Seventeen**

Everett asserts that trial counsel was ineffective for failing to object to the state's failure to introduce the entire surveillance video from Poor Walt's Lounge, a bar Everett was seen entering and exiting multiple times the night of the murder. Doc. 30 at 54-57, 78-84. According to Everett, the state's failure to introduce the entire video amounted to a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). <u>Id.</u> Had the entire video been played, Everett claims the circuit court would have seen him entering and leaving the bar three times, which would have led the circuit court to conclude that Moore and Halverson's hearsay testimony, as discussed above in Ground One, was inadmissible. <u>Id.</u> at 57. Respondents contend Everett failed to properly exhaust this claim, because he raised it as a claim of ineffective assistance of postconviction counsel on direct appeal of his resentencing and in his Second Rule 3.850 Motion. Doc. 38 at 10-11.

The record reflects Everett did raise this claim as a claim of ineffective assistance of postconviction counsel in both his appeal of his resentencing and in his Second Rule 3.850 Motion. Resp. Exs. S at 32-36; W at 301-04. However, Everett raised this as a claim of ineffective assistance of trial counsel in his Amended Second Rule 3.850 Motion. Resp. Ex. Y at 348-51. The circuit court subsequently denied this claim of ineffective assistance of trial counsel, stating that:

During the trial a video from Poor Walt's Lounge, and testimony concerning the video, was admitted into evidence. Defendant Everett had come and gone from Poor Walt's multiple times the night of the murder. He now alleges the video is inaccurate because it omits the 7:30 pm time he left Poor Walt's. The murder had occurred between 9:50 pm and 10:15 pm; the video show[s] the Defendant had returned to the bar from 9:40 – 9:44, purchased a beer, and left the bar with the amber beer bottle in his pocket. The Defendant identified the relevant timeline at trial, as well as leaving Poor Walt's with the beer bottle in his back pocket.

The record shows that Ms. Brown had called her best friend, Joceyln Moore at around 9:40 pm. Mrs. Moore testified that Ms. Brown was crying uncontrollably, and then told Mrs. Moore that Michael had just been to her house, that he told her she needed to "move house", he had a knife and said he was going to kill her. The victim made her last phone call at 9:50 to Leif Halverson, which she abruptly terminated to call the police. When her concerned friends, Mr. and Mrs. Moore, arrived at or about 10:15 Ms. Brown was dead. She had a pool of blood around her head; there were glass shards around her body. What had occurred at 7:30, if anything, would be irrelevant to the occurrence of the crime and therefore would cause no prejudice to the Defendant.

Resp. Ex. Z at 379-80 (record citations omitted). The Fifth DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Ex. BB. Based on this record, the Court concludes Everett has properly exhausted this claim. See Boerckel, 526 U.S. at 845.

To the extent that the Fifth DCA decided the claim on the merits,[17] the Court will address the claim in accordance with the deferential standard for federal court

---

[17] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Everett is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, Grounds Eleven and Seventeen are without merit. Brady governs a state's withholding of exculpatory evidence. To establish a Brady claim, a petitioner must demonstrate: "(1) that the prosecution suppressed evidence (2) that was favorable to the [petitioner] or exculpatory and (3) that the evidence was material." United States v. Blasco, 702 F.2d 1315, 1327 (11th Cir. 1983) (citation omitted). Notably, "[t]he Brady mandate only applies to information in the possession of the prosecutor or anyone under his authority that defense counsel could not have obtained by exercising reasonable diligence through other means." United States v. Naranjo, 634 F.3d 1198, 1212 (11th Cir. 2011); see also United States v. Griggs, 713 F.2d 672, 674 (11th Cir. 1983) ("Where defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged Brady material, there is no suppression by the government.").

Everett cannot establish a Brady violation because both he and his attorney were aware of the existence of the video generally; therefore, the use of due diligence could have led them to the specific portions of the video Everett now claims the state

48

withheld. See Naranjo, 634 F.3d at 1212. Furthermore, the evidence in question involved Everett personally. He was the individual entering and exiting Poor Walt's Lounge; therefore, he had first-hand knowledge, prior to trial, of what should have been on that surveillance footage. Accordingly, it cannot be said the state withheld this evidence within the meaning Brady. See Griggs, 713 F.2d at 674.

Moreover, Everett's own trial testimony refutes his claim that "the first encounter between Mr. Everett and [the victim] was during the first time Mr. Everett left Poor Walt's Lounge." Doc. 30 at 57. At trial, Everett testified that he went to Poor Walt's Lounge three times, first coming there at 6:30 p.m.[18] Resp. Ex. B at 412. According to Everett, he stayed at the bar for what felt like an hour then left for the first time to go home to call a friend and drink another beer before returning around 8:15 p.m. Id. at 412-14. Everett testified that he then left Poor Walt's Lounge a second time to go to the victim's apartment where they had an argument causing him to leave the victim's home. Id. at 414-20. He further testified upon leaving the victim's home he returned to the bar a third time for a few minutes before he again left to go to the victim's apartment. Id. at 420-21. Accordingly, Everett's trial testimony refutes his claim that his first encounter with the victim occurred the first time he left the bar. As Everett's trial testimony corroborates the timeline the state presented through Moore and Halvorsen, raising this claim would have been meritless. Counsel cannot

---

[18] An officer who reviewed the surveillance video from Poor Walt's Lounge testified that Everett first appeared around 6:30 p.m., leaves at 8:40 p.m., returns between 9:36 and 9:40 p.m. and again leaves shortly thereafter at 9:44 p.m. Resp. Ex. B at 253-54.

be deemed ineffective for failing to raise a meritless issue. <u>See</u> <u>Bolender</u>, 16 F.3d at 1573. Grounds Eleven and Seventeen are denied.

### K.     Grounds Twelve and Eighteen

Everett contends trial counsel was ineffective for failing to object to the portion of the burglary instruction discussing "remaining in" and "stealthy entry." Doc. 30 at 58-62, 86-89. According to Everett there was no evidence to support the "remaining in" language of the instruction because "there was no allegation or evidence that Petitioner ever had permission to be in the victim's home." <u>Id.</u> at 61. Everett claims the circuit court's reading of the "remaining in" portion of the instruction, "suggested that the jury could convict Petitioner if he either entered the victim's home with the intent to commit an offense or did not form the intent until after he remained in her home." <u>Id.</u> Everett asserts that without evidence of consensual entry, the only way he could have been convicted of burglary is if he had the intent to commit an offense prior to entering the victim's apartment. <u>Id.</u> Likewise, Everett claims there was no evidence of stealthy entry without consent because he had a key to the apartment. <u>Id.</u> at 62.

Respondents contend Everett failed to properly exhaust this claim, because he raised it as a claim of ineffective assistance of postconviction counsel on direct appeal of his resentencing and in his Second Rule 3.850 Motion. Doc. 38 at 10-11. The record reflects Everett did raise this claim as a claim of ineffective assistance of postconviction counsel in both his appeal of his resentencing and in his Second Rule 3.850 Motion following his resentencing. Resp. Exs. S at 37-44; W at 305-12. However, Everett also raised this as a claim of ineffective assistance of trial counsel in his

Amended Second Rule 3.850 Motion. Resp. Ex. Y at 352-59. The circuit court

subsequently denied this claim of ineffective assistance of trial counsel, stating that:

> The Defendant alleges that the burglary instruction, which contained the language that the Defendant had remained in and/or made an unlawful entry, was a violation of his constitutional rights. He asserts there was no evidence presented by the State which established either consent or unlawful entry. In fact, evidence was presented as to both theories of entry. The Defendant testified he was let in by the deceased, and that he had previously kicked the entry door. Florida Department of Law Enforcement Senior Crime Analyst, John Holmquist, was called out to the crime scene to process the murder site. He testified as to the damage to the entry door, both the exterior and interior, suggesting unlawful entry. This was a factual issue to be determined by the jury. This claim is summarily denied.

Resp. Ex. Z at 380 (record citations omitted). The Fifth DCA per curiam affirmed the

denial of this claim without a written opinion. Resp. Ex. BB. Based on this record, the

Court concludes Everett has properly exhausted this claim. See Boerckel, 526 U.S. at

845.

To the extent that the Fifth DCA decided the claim on the merits,[19] the Court

will address the claim in accordance with the deferential standard for federal court

review of state court adjudications. After a review of the record and the applicable law,

the Court concludes that the state court's adjudication of this claim was not contrary

to clearly established federal law, did not involve an unreasonable application of

clearly established federal law, and was not based on an unreasonable determination

---

[19] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

of the facts in light of the evidence presented in the state court proceedings. Thus, Everett is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, Grounds Twelve and Eighteen are without merit. "Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'" Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle, 502 U.S. at 72). "If there is no basis in the record for the instruction given, such error may raise a 'substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations,' and reversal may be required." Pesaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1525 (11th Cir.1985) (quoting McElroy v. Firestone Tire & Rubber Co., 894 F.2d 1504, 1509 (11th Cir. 1990)).

Everett's trial testimony provided evidence supporting the reading of the "remaining in" language of the burglary instruction. At trial, he testified that upon returning to the victim's home she had unlocked her deadbolt and opened her door, at which point, according to Everett, her dog knocked her off balance causing her to fall down the stairs. Resp. Ex. B at 424-25. He then went inside to help her, but after awhile they began arguing, at which point he murdered the victim. Id. at 425-29. Accordingly, there was evidence to support a "remaining in" instruction because, at least momentarily, the victim arguably allowed Everett into her home. Furthermore, there was also evidence of a forced entry. Id. at 58-67, 91, 92. Therefore, evidence

52

supported the reading of this instruction and counsel cannot be deemed ineffective for failing to argue a meritless point. See Bolender, 16 F.3d at 1573. Concerning the stealthy entry instruction, the circuit court did not read that portion of the instruction; as such counsel had no grounds to object. Id. at 499, 504, 575-79. Accordingly, Everett has failed to demonstrate deficient performance and Grounds Twelve and Eighteen are denied.

**L.     Ground Thirteen**

Everett avers that counsel was ineffective for failing to object to malicious prosecution. Doc. 30 at 63-66. According to Everett, the evidence did not warrant the severity of charges or a life sentence. Id. Furthermore, he claims that the prosecutor had previously nolle prossed prior complaints the victim brought against Everett. Id. at 30. Had the prosecutor not done so, Everett asserts the victim would have been alive. Id. The prosecutor understood the same, which is why Everett contends the prosecutor maliciously sought to convict Everett of more severe crimes than the evidence supported. Id. at 30-31.

Respondents contend Everett failed to properly exhaust this claim, because he raised it as a claim of ineffective assistance of postconviction counsel on direct appeal of his resentencing. Doc. 38 at 10-11. The record reflects Everett did raise a claim of ineffective assistance of postconviction counsel in his appeal of his resentencing, which made similar allegations. Resp. Ex. S at 45-48. However, he did not otherwise raise this claim as a claim of ineffective assistance of *trial* counsel with the state court. Accordingly, this claim is unexhausted as Everett failed to fairly present the federal

nature of this claim in state court. <u>See</u> <u>Baldwin</u>, 541 U.S. at 29. Everett has failed to show cause to excuse this default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Nevertheless, even if Everett had properly exhausted this claim, he would not be entitled to federal habeas relief. The jury convicted Everett on counts one and two, which were both charged in the Indictment. Resp. Exs. A; M App. H. Accordingly, Everett's argument that the state vindictively charged him is meritless because a jury concluded the evidence supported beyond a reasonable doubt each charged offense. <u>Cf.</u> <u>Heck v. Humphrey</u>, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."). As the evidence supported the charged crimes and a jury concluded the evidence supported the same, counsel cannot be deemed ineffective for failing to raise this meritless issue. <u>See</u> <u>Bolender</u>, 16 F.3d at 1573. Ground Thirteen is therefore denied.

### M.  Grounds Fourteen and Nineteen

Everett complains that resentencing counsel was ineffective for failing to adopt Everett's pro se Motion for New Trial and Motion for Arrest of Judgment. Doc. 30 at 67-70, 90-97. Had counsel adopted these motions, Everett claims the circuit court would have granted them. <u>Id.</u>

Respondents assert Everett failed to properly exhaust this claim because he never presented this claim in state court. Doc. 38 at 10. Everett counters that he did

54

raise this claim in his initial brief of the appeal of his resentencing. Doc. 41 at 4. Moreover, Everett claims any procedural default is excused pursuant to <u>Carrier</u> or <u>Martinez</u>. <u>Id.</u>

The record reflects that Everett raised a claim that postconviction counsel was ineffective for failing to adopt these motions. Resp. Ex. S at 49-51. Although identified as "postconviction counsel" in his initial brief, upon review, Everett was discussing the same attorney as he does in Ground Thirteen, his resentencing attorney. <u>Id.</u>; Doc. 30 at 67-70. Moreover, Everett raised a similar claim in his Amended Second Rule 3.850 Motion. Resp. Ex. Y at 359-61. The circuit court subsequently denied this claim of ineffective assistance of trial counsel, stating that "[n]either motion would be appropriately filed following a resentencing; they are to be filed when a verdict has been rendered." Resp. Ex. Z at 381. The Fifth DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Ex. BB. Based on this record, the Court concludes Everett has properly exhausted this claim. <u>See</u> <u>Boerckel</u>, 526 U.S. at 845.

To the extent that the Fifth DCA decided the claim on the merits,[20] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of

---

[20] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Everett is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, Grounds Fourteen and Nineteen are without merit. Pursuant to Florida Rule of Criminal Procedure 3.590(a), "a motion for new trial or in arrest of judgment, or both may be made . . . within 10 days after the rendition of the verdict or the finding of the court." Notably, "the ten day period prescribed under Rule 3.590(a) is jurisdictional in nature and, hence, cannot be extended by the parties or the trial court." State v. Bodden, 756 So. 2d 1111, 1113 (Fla. 3d DCA 2000).

Here, the verdict was rendered on April 17, 2008. Resp. Ex. M App. H. Everett's motions were not filed until March 24, 2014, almost six years after the verdict had been rendered. Accordingly, even if counsel had adopted the motions, they would have been untimely and the circuit court would have been without jurisdiction to rule on them. See Fla. R. Crim. P. 3.590(a); Bodden, 756 So. 2d at 1113. To the extent Everett requests the Court to interpret state law and the meaning of "verdict" in Rule 3.590(a), such an analysis is outside the scope of federal habeas review. See Estelle, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Swarthout, 562 U.S. at 219 (holding errors of state law are not cognizable in federal habeas review). As such, counsel is not ineffective for failing to raise a meritless issue. See Bolender, 16 F.3d at 1573. Therefore, Grounds Fourteen and Nineteen are denied.

### N.    Grounds Fifteen and Twenty

Everett asserts that trial counsel was ineffective for failing to call Carla Cline as a defense witness. Doc. 30 at 70-73, 98-100. According to Everett, Cline would have testified that she saw Everett frequently leave the victim's apartment in the mornings, which Everett claims would have established he lived or cohabitated at the victim's apartment. Id. at 71-72. Everett further argues postconviction counsel, Paula Coffman,[21] was ineffective for failing to raise this claim in his Amended Rule 3.850 Motion. Id.

Respondents assert Everett failed to properly exhaust this claim because he never presented this claim in state court. Doc. 38 at 10. Everett counters that he did raise this claim in his initial brief of the appeal of his resentencing. Doc. 41 at 4. Moreover, Everett claims any procedural default is excused pursuant to Carrier or Martinez. Id.

The record reflects Everett raised this issue as an ineffective assistance of postconviction counsel claim in his initial brief of his appeal following his resentencing and in his Second Rule 3.850 Motion. Resp. Exs. S at 52-55; W at 315-17. In his Amended Second Rule 3.850 Motion, Everett also raised this claim as an ineffective assistance of trial counsel. Resp. Ex. Y at 362-64. The circuit court denied the claim, stating that:

> The Defendant claims Carla Cline's testimony would
> have demonstrated he lived with Lindsay Brown, negating

---

[21] Coffman represented Everett in his original Rule 3.850 proceedings. See Resp. Exs. F; G.

all essential elements of burglary. The fact that Defendant Everett did not live with Lindsay Brown is apparent from the record. Richard Moore, the friend who found Ms. Brown's body, testified the Defendant was a former boyfriend of the victim. Michael Shon McGuire, a homicide investigator from the Office of the State Attorney, interviewed the Defendant approximately four hours after the murder. A video of that interview was admitted into evidence as State Exhibit 5, and was played in part for the jury. The video shows the Defendant gave several addresses where he resided; none of those were Ms. Brown's address. Then the Defendant said he practically lived at Ms. Brown's, and ultimately acknowledge he didn't live there.

Diana Cline, Carla Cline's mother, also testified relevant to this issue; she was Ms. Brown's landlord. She testified she was aware that Ms. Brown had dated Mr. Everett, but he did not live there. Ms. Cline also testified that Ms. Brown had a new boyfriend, Leif Halvorsen, beginning around October of 2006; two to three months prior to the murder. Carla Cline's deposition made clear that Ms. Brown and Mr. Everett's relationship was over, they had broken up "in or around October and then definitely in November." This claim is without merit and summarily denied.

Resp. Ex. Z at 381-82 (record citations omitted). The Fifth DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Ex. BB.

Concerning his claim of ineffective assistance of postconviction counsel, the Court finds Everett failed to properly exhaust this claim, and, in any event, Everett would not be entitled to federal habeas relief on such a claim. See Coleman, 501 U.S. at 752 (noting there is no constitutional right to postconviction counsel in state proceedings; therefore, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."). However, based on this record, the Court

concludes Everett has properly exhausted a claim of ineffective assistance of trial counsel. See Boerckel, 526 U.S. at 845.

To the extent that the Fifth DCA decided the claim on the merits,[22] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Everett is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, Grounds Fifteen and Twenty are without merit. The state presented the following evidence at trial establishing Everett did not live with the victim: (1) the victim had broken up with Everett approximately three months before the murder and she was dating Halverson at the time, Resp. Ex. B at 130, 242, 291-92, 319; (2) the victim's apartment was only in her name and she lived alone, Id. at 239-41, 288; (3) Everett had a son at home he had to supervise, Id. at 288; and (4) none of the home addresses Everett gave in his interview with police match the victim's address and he admitted to police he no longer lived with the victim. Id. at 138-42. Accordingly, the

---

[22] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

state presented substantial evidence that Everett did not have authority to freely enter the victim's home.

Moreover, upon reviewing Cline's deposition, her testimony would not have benefited Everett as it corroborated the state's evidence at trial. Cline testified in her deposition that Everett and the victim had broken up in October or November, approximately three months before the murder, and the victim had moved on and began dating Halvorsen since then. Doc. 31-9 at 7-9. Moreover, she testified that she did not see Everett often after he and the victim ended their relationship. Id. at 13. Based on the evidence introduced at trial and Cline's deposition testimony, calling Cline as a witness would not have supported a defense against burglary. As such, counsel is not ineffective for failing to raise a meritless issue. See Bolender, 16 F.3d at 1573. Therefore, Grounds Fifteen and Twenty are denied.

Accordingly, it is **ORDERED AND ADJUDGED**:

1.     The Amended Petition (Doc. 30) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Everett appeals this Order, the Court denies a certificate of appealability.  Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion

to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[23]

**DONE AND ORDERED** in Jacksonville, Florida this 7th day of January, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-8

C:    Michael Robert Everett
      Counsel of Record

---

[23] The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Everett "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.